UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
XIAO LING CHEN, ZENG BIAO TENG, XUAN
BIN FANG, HUI LING CHEN, on behalf of
themselves and others similarly situated,

                Plaintiffs,

    -against-

XPRESSPA AT TERM. 4 JFK, LLC, et al.

                Defendants.
-----------------------------------------------------------x

FILED
U.S. ___ OFFICE
★ SEP 2 3 2016 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-1347 (CBA) (CLP)

**AMON, United States District Judge:**

    In this Fair Labor Standards Act ("FLSA") case, plaintiffs Xiao Ling Chen, Zeng Biao

Teng, Xuan Bin Fang, and Hui Ling Chen (together the "Named Plaintiffs") move the Court to

conditionally certify their proposed collective action on behalf of all "similarly situated"

employees of the defendant XpresSpa at Terminal 4, JFK, LLC, and others[1] pursuant to 29 U.S.C.

§ 216(b). Section 216(b) permits FLSA plaintiffs to represent all "similarly situated" employees

who opt in to the collective action by filing notice with the Court. Eight employees—Kathy

Dickelman, Darryl Tompkins, Kimberly McCants, Antranae Lee, Kimberly Peek, Freida Knox,

Zenida Lozada, and Tiara Robinson (together the "Opt-In Plaintiffs")—have already opted in as

party plaintiffs. (See D.E. # 41–48.) The Court referred the motion to Magistrate Judge Cheryl L.

---

[1] The employer defendants are Binn and Partners LLC, Spa Products Import & Distributors Co., LLC, XpresSpa JFK
Terminal 7, LLC, Xpressa Atlanta Terminal C, LLC, Xpressa Chicago O'Hare, LLC, Xpressa Atlanta Terminal A,
LLC, Xpressa DFW Kiosk LLC, Xpressa DFW Terminal A, LLC, Xpressa DFW Terminal D, LLC, Xpressa
Denver Airport, LLC, Xpressa Franchising, LLC, Xpressa Holdings, LLC, Xpressa Houston Intercontinental,
LLC, Xpressa International Holdings, LLC, Xpressa JFK Terminal 1, LLC, Xpressa JFK Terminal 5, LLC,
Xpressa John Wayne Airport, LLC, Xpressa LAX Airport, LLC, Xpressa LAX Terminal 6, LLC, Xpressa LAX
Tom Bradley, LLC, Xpressa LaGuardia Terminal B, LLC, Xpressa Laguardia Airport, LLC, Xpressa Las Vegas
Airport, LLC, Xpressa MSP Airport, LLC, Xpressa Miami Airport, LLC, Xpressa Mobile Services, LLC,
Xpressa Online Shopping, LLC, Xpressa Orlando International, LLC, Xpressa Philadelphia Airport, LLC,
Xpressa Pittsburgh A, LLC, Xpressa Raleigh-Durham Int'l, LLC, Xpressa Salt City, LLC, Xpressa Tampa
Airport, LLC, Xpressa Washington Dulles, LLC, and Xpressa at Term. 4 JFK, LLC, Marisol Binn, and Moreton
Binn (collectively referred to as "Defendants").

1

Pollak, and on February 16, 2016, Magistrate Judge Pollak issued a Report and Recommendation ("R&R") recommending that the Court grant the Named Plaintiffs' motion for conditional certification; that the parties be given two weeks from the date the Court issues its Order adopting the R&R to agree upon a confidentiality stipulation, for defendants to produce the information sought by plaintiffs to facilitate sending notice to the class, and for the parties to provide a joint notice for the Court's review; that English, Spanish, and Chinese versions of the notice be mailed to the prospective opt-in plaintiffs and also made available and posted on Defendants' employee bulletin boards; and that the statute of limitations of the FLSA action be tolled from July 1, 2015, to the date on which notice is mailed to the prospective plaintiffs. (D.E. # 62 ("R&R").) On March 1, 2016, Defendants filed objections to the R&R. (D.E. # 63 ("Defs. Obj.").) For the following reasons, the Court adopts Magistrate Judge Pollak's R&R in its entirety.

## BACKGROUND

The Named Plaintiffs and Opt-in Plaintiffs are former and current employees of various XpresSpa locations at major airports throughout the country. (R&R at 2–3[2]; D.E. # 23–26 (affidavits of the Named Plaintiffs); D.E. # 50–57 (affidavits of the Opt-in Plaintiffs).) Plaintiffs allege that during their employment as spa technicians with Defendants, they were paid on a commission-only basis, in which they would receive 30% of the revenue for every spa service they performed and 10% for every product that they sold. (R&R at 2–3.) Plaintiffs claim that they regularly worked eight hours per day, four to six days per week, but were not paid minimum wages at their regular hourly rate or any base compensation. (Id. at 3.)

Plaintiffs further allege that XpresSpa employees did not receive overtime pay because it was the Defendants' practice to misclassify the spa technicians as independent contractors and

---

[2] The Court cites facts as presented in the R&R, but only those relevant to Defendants' objections. The R&R presents the facts fully and comprehensively.

thus, exempt employees for whom Defendants were not required to pay overtime compensation. (Id.) Additionally, Plaintiffs claim that during their employment with Defendants, they were frequently required to engage in work that would not generate any commission pay and for which they would receive no compensation. (Id.) This included displaying products, cleaning laundry, preparing towels, cleaning spa equipment, mopping floors, and working at the stores' cash registers. (Id.) Plaintiffs allege that they were also required to travel to different XpresSpa locations, but were not compensated for that travel time. (Id. at 4.)

Plaintiffs also claim that they were subject to a rotation policy. (Id. at 3–4.) Under this policy, employees were required to solicit customers for spa services, although they would not necessarily be the technician that would perform those services, in which case they would not receive any compensation. (Id.) Additionally, Plaintiffs allege that they were required to place deposits of $25 for uniforms and to maintain them at their own expense; that they never received proper wage and hour notices of proper forms of wage statements; and that spa technicians never received spread-of-hours pay despite working more than ten hours in a given day. (Id. at 4.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of an R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). But "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

**DISCUSSION**

**I.       Defendants' Objections**

Defendants make three objections to the R&R: that the Named Plaintiffs are not similarly situated to the nationwide collective they seek to represent, arguing that Defendants presented Magistrate Judge Pollack with "unrefuted" evidence that the rotation and compensation policies "are not uniform nationwide[,]" (Defs. Obj. at 3); that Plaintiffs' evidence produced in connection with the Kuznetsov[3] action should be disregarded, (id. at 5); and that equitable tolling of the FLSA statute of limitations is inappropriate. (Id. at 6.) The Court addresses each objection in turn and addresses the underlying claims de novo.

**A. "Similarly Situated" Plaintiffs**

Defendants first object to the R&R by arguing that the Named Plaintiffs are not "similarly situated" to the nationwide collective that they seek to represent. (Id. at 3.) Defendants contend that they presented "uncontroverted evidence" in their opposition showing that "not all XpresSpa locations nationwide utilize a 'Rotation' system, [and that] not all locations pay their spa technicians solely on a commission basis . . . ." (Id.)

To show at this stage that similarly situated opt-in plaintiffs exist, the Named Plaintiffs must make a "modest factual showing" that their proposed opt-in plaintiffs were victims of a common policy or plan that violated the law. The common policies that the Named Plaintiffs allege they and the proposed opt-in plaintiffs suffered were policies that resulted in the invalid classification of Plaintiffs as "exempt employees under the FLSA," in violation of 29 U.S.C. § 207(i). (See D.E. # 22 ("Pls. Mem.") at 12–13.) In order for employees to be exempt under §

---

[3] In support of their motion for collective action certification, the Plaintiffs also provided evidence derived from a previous action involving the Defendants entitled Kuznetsov v. Xpresspa-Jdee JV, LLC, No. 10-CV-3473 (E.D.N.Y. 2010).

207(i), the employer must meet two conditions: (1) "the regular rate of pay" of the employees must be "in excess of one and one-half times the minimum hourly rate," and (2) "more than half [of their] compensation" must "represent[] commissions on goods or services." Plaintiffs specifically allege that they were subject to (1) a companywide rotation policy, in which employees were required to solicit customers from whom they would not earn any commissions, even though the solicitations would generate income for the XpresSpa store; and (2) policies of not compensating employees for other non-commissioned work, with both policies resulting in the Plaintiffs' lack of compensation at the adequate regular rate of pay for the actual work they performed, and thus, resulting in an unlawful misclassification as "exempt" employees under § 207(i). (Pls. Mem. at 12–13; Pls. Reply at 1.)

Plaintiffs seek to demonstrate their required modest factual showing of common policies through a series of affidavits. See Bittencourt v. Ferrara Bakery & Café, Inc., 310 F.R.D. 106, 111 (S.D.N.Y. 2015) ("In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members."). Each affidavit describes and represents XpresSpa employment experiences at six distinct locations in five different states. In each, the declarants state that they have been subject to both a rotation policy and a policy of not being compensated for other non-commissioned work. (See D.E. # 23–26 (affidavits of the Named Plaintiffs); D.E. # 50–57 (affidavits of the Opt-in Plaintiffs).) Additionally, within the affidavits, Plaintiffs expressly attest that it is their belief that these non-compensation policies were common to all other XpresSpa employees. (See, e.g., D.E. # 50 ¶ 9 ("My understanding is that for all XpreSpa locations throughout the country, spa technicians are required to travel between stores at the same airport terminal (or between stores at different airport terminals) but be uncompensated for such travel

time."); D.E. # 25 ¶ 5 ("Based on my personal observations and conversations with other employees, it was Defendants' policy to not pay any base compensation to all spa technicians employed by Defendants at XpresSpa"); D.E. # 23 ¶ 7 ("As a result of" the rotation system, "spa technicians employed by Defendants at XpresSpa (including, but not limited to, individuals listed . . . herein) did not receive proper commissions on sales that they generated.").)

Despite this evidence, Defendants contend that Plaintiffs have failed to make their modest factual showing of common policies based on the Defendants' alleged "unrefuted" and "uncontroverted" evidence establishing that "not all XpresSpa locations nationwide utilize a 'Rotation' system, [and that] not all locations pay their spa technicians solely on a commission basis . . . ." (Defs. Obj. at 3.) Defendants' sole evidence is the Declaration of Solomon Crayton, XpresSpa Vice President and General Manager, (D.E. # 32, ("Crayton Decl.")), in which Crayton states that the policies presented by Plaintiffs are not uniform at all XpresSpa locations. (See Defs. Obj. at 3–4.)

First, in regards to the rotation system policy, Defendants assert that "XpresSpa does not utilize a rotation system at all locations where others Plaintiffs seek to represent worked." (Defs. Obj. at 4 (citing to Crayton Decl. ¶¶ 7–9).) Crayton states that "there has been no rotation system at Dallas/Fort Worth International Airport (E Concourse) or George Bush Intercontinental Airport in Houston (Terminal E)[,]" (id. (citing to Crayton Decl. ¶ 8)), and that "technicians performing services at certain locations at McCarran International Airport, Minneapolis – St. Paul International Airport and Miami International Airport are not subject to any rotation system[,]" (id. (citing to Crayton Decl. ¶ 9)). Additionally, Defendants assert that "certain XpresSpa locations at JFK, LaGuardia, Dallas/Fort Worth and Orlando airports employ a dedicated individual to

engage prospective customers outside the spa, thereby changing the dynamic of the rotation system." (Id. (citing to Crayton Decl. ¶ 10).)

Second, in regards to the policy of not compensating employees for non-commissioned work, Crayton states that "not all spa technicians nationwide are paid solely by commissions[,]" and that, as an "example, XpresSpa technicians at Pittsburgh International Airport and Chicago O'Hare International Airport receive an hourly rate of pay plus a 25% commission draw." (Id. (citing to Crayton Decl. ¶ 6).)

Plaintiffs respond to Crayton's declaration by arguing that even if these few specific stores do not implement either the rotation or commission-only policies, all of the proposed opt-in plaintiffs are still subjected to those policies, because employees at all XpresSpa locations are required to transfer between locations and stores. (See Pls. Reply at 8–9.)

This factual dispute is not properly resolved at this stage of the litigation. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (stating the Court's role at the initial stage is not to "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); see also Hoffmann-La Roche, 493 U.S. at 174 (stating that "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"). Instead, the Court's "limited role at this stage is simply to determine whether the plaintiff[s] ha[ve] sufficiently alleged that [they] and other employees were victims of a common compensation policy that violated the FLSA." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013). "Accordingly, if the plaintiff[s'] allegations are sufficient on their face to support conditional certification," Defendants "may not defeat the plaintiff[s'] motion by presenting conflicting factual assertions." Id.

Plaintiffs have presented at least a modest showing that the rotation policy and the policy of not compensating for non-commissioned work are common among all proposed collective action members. As the R&R correctly notes, courts in the Second Circuit have "regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." See Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). Additionally, courts in previous actions have granted collective action certification based on similar or even thinner evidence than that presented by Plaintiffs in the instant case. See, e.g., Flood v. Carlson Restaurants Inc., No. 14-CV-2740 (AT), 2015 WL 260436, at *3–4 (S.D.N.Y. Jan. 20, 2015) (granting certification for 42,000 nationwide employees based on six declarations covering eight restaurants in four states); Guttentag v. Ruby Tuesday, Inc., No. 12-CV-3041 (HB), 2013 WL 2602521, at *2 (S.D.N.Y. June 11, 2013) (granting certification of a nationwide collective based solely on declarations and depositions of plaintiffs covering eight store locations in four states).

If, after discovery, Defendants can show that some plaintiffs are not similarly situated, they may move to decertify the action with respect to those plaintiffs. But at this stage, the Court finds that Plaintiffs have adequately demonstrated that Defendants implemented common policies that affected spa technicians nationwide. The Court therefore adopts the R&R's recommendation that Plaintiffs' motion for conditional certification be granted.

### B. Evidence from the Kuznetsov Action

Defendants object that the R&R failed to address Defendants' argument that Plaintiffs' evidence derived from the Kuznetsov action should have been disregarded, rendering Plaintiffs' evidence insufficient. (Defs. Obj. at 5–6.) Defendants are correct that the R&R did not address

whether the evidence should have been disregarded. As explained in the previous section, however, Plaintiffs' affidavits alone are sufficient to meet the Plaintiffs' burden of making a "modest factual showing" that common policies impact all of the potential opt-in plaintiffs, and that as such, the Plaintiffs are similarly situated. The Court therefore need not consider whether the Kuznetsov evidence is admissible.

### C. Equitable Tolling of the FLSA Statute of Limitations

Finally, Defendants also object to the R&R's recommendation that the FLSA's statute of limitations be equitably tolled. (Defs. Obj. at 6.) Defendants do not dispute that the statute of limitations is three years, (id. at 7 ("notice should be sent to those spa technicians who worked for XpresSpa during the three-year period measured back from when notice is sent"). See also 29 U.S.C. § 255(a). However, Defendants contend that the three-year limitation period should not be tolled and that, as a result, the collective-action notices should only be sent to those potential opt-in plaintiffs who worked for Defendants "during the three-year period measured back from when notice is sent or, at most, three years back from the date of the Court's Order granting conditional certification." (Defs. Obj. at 7).

"[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (citations, alterations, and internal quotation marks omitted). Defendants argue that in the present matter, "Plaintiffs were not faced with any obstacles frustrating their ability to move for conditional certification at the earliest date they desired. In fact, Plaintiffs moved for conditional certification . . . less than one month after Defendants filed their Answers . . . . After one joint request . . . for an adjournment of the briefing schedule . . . , Plaintiffs subsequently requested and were granted two extensions of time to submit

their reply papers, which further delayed the disposition of the motion." (Defs. Obj. at 7 (citing D.E. # 21, 30, 35, 39).)

"[C]ourts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances." Glatt v. Fox Searchlight Pictures Inc., No. 11-CV-6784 (WHP), 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (citing and quoting McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)) (internal quotations omitted). Courts have held that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." See Glatt, 2013 WL 4834428, at *2 (citing and quoting McGlone, 867 F. Supp. 2d at 445); see, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170–71 (S.D.N.Y. 2014) (tolling the statute of limitations from the filing date of plaintiff's motion).

Equitable tolling in the instant matter is likewise appropriate in order to avoid prejudice to potential opt-in plaintiffs who would potentially be denied the opportunity to participate in the litigation. See, e.g., Jackson, 298 F.R.D. at 170 ("Plaintiff moved for conditional certification shortly after filing the complaint, and the motion has been fully briefed for more than seven months. Absent tolling of the limitations period, a substantial number of class members may now be time-barred").

Accordingly, the Court grants Plaintiffs' request and orders that the statute of limitations under the FLSA be tolled from July 1, 2015—the date on which the motion to conditionally certify the collective action was filed—to the date on which notices are mailed to the potential opt-in plaintiffs.

## II.    Remaining Recommendations

The Court has reviewed the remaining portions of the R&R and the record and, finding no clear error, adopts Magistrate Judge Pollak's recommendations.

## CONCLUSION

For these reasons, the Court grants Plaintiffs' motion for conditional collective-action certification and orders that the statute of limitations in the instant matter be tolled from July 1, 2015 to the date on which notices are mailed to the potential opt-in plaintiffs. Additionally, the Court adopts Magistrate Judge Pollak's recommendations and orders that (1) the defendants must produce the information sought by plaintiffs to facilitate sending notice to the class; (2) the parties are given two weeks from the date of this order's issuance to (i) complete such discovery, (ii) meet and confer and agree on a confidentiality stipulation, and (iii) propose a joint notice for each subclass for review by the Court; (3) the proposed notices that are to be sent to potential opt-in plaintiffs shall include English, Spanish, and Chinese versions; (4) Defendants shall produce information sought by Plaintiffs to facilitate sending notice to the class; and (5) English, Spanish, and Chinese versions of notices regarding the collective action shall be posted on Defendants' employee bulletin boards.

SO ORDERED.

Dated: September 22, 2016
        Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge

11