UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
XIAO LING CHEN *et al.*,

                     Plaintiffs,

             -against-

XPRESSPA AT TERMINAL 4 JFK LLC,
*et al.*,

                  Defendants.
----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
15 CV 1347 (CLP)

**POLLAK**, United States Magistrate Judge:

On March 16, 2015, plaintiffs commenced this class and collective action on behalf of

themselves and other similarly situated employees against XpresSpa at Terminal 4, JFK, LLC,

and 34 other XpresSpas located in various airport terminals around the country,[1] seeking

damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a), and 216(b),

and the New York Labor Law ("NYLL") § 190 <u>et seq.</u> and § 650 <u>et seq.</u>, for unpaid minimum

wages, unpaid overtime compensation, unpaid spread of hours wages, and for violations of the

requirements to provide wage notices and accurate wage statements under Sections 195(1) and

195(3) of the NYLL.  (<u>See generally</u> Compl.[2]).

On September 15, 2017, the parties indicated that they had reached a proposed settlement

and filed a motion with this Court requesting an Order[3] granting preliminary approval of the

proposed settlement as set forth in the original Settlement Agreement and Release (the "original

Settlement Agreement").[4]  The Court denied the request and raised a number of concerns

---

[1] Also named as defendants were Binn and Partners, LLC, Spa Products Import & Distribution
Co., LLC, Marisol Binn, and Moreton Binn (collectively, with XpresSpa, "defendants").

[2] Citations to "Compl." refer to plaintiffs' Complaint, filed on March 16, 2015, ECF No. 1.

[3] On March 3, 2017, the parties consented to the undersigned for all purposes.

[4] Citations to "original Settlement Agreement" refer to the original Settlement Agreement, filed
on September 15, 2017 as Exhibit A to the Affidavit in Support of Motion for Preliminary Approval of

regarding the original Settlement Agreement, including the procedures for determining each

Class and Collective Member's awards, the mechanism for providing notice, the fairness of the

proposed service awards, and the proposed *cy pres* recipient.  (See generally 3/30/2018 Order).[5]

On April 25, 2018, this Court held a hearing, after which the parties submitted a revised

Settlement Agreement and Notice ("Revised Settlement Agreement").[6]  In a Memorandum and

Order dated August 21, 2019, the Court denied the request to approve the parties' proposed

Revised Settlement.  On August 10, 2020, the parties filed a motion seeking preliminary

approval of the Settlement Agreement and Release dated August 7, 2020 ("Sett. Agr.");[7]

appointing the Lee Litigation Group, PLLC ("Lee Firm") as Class Counsel; approving the

proposed Notice of Proposed Settlement; and approving Advanced Litigation Strategies, LLC as

Claims Administrator.

For the reasons set forth below, the Court denies the motion pending submission of

further information regarding the requested Claims Administrator fees.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts underlying this class and collective action are set forth more fully in

the Court's earlier Report and Recommendation, dated February 16, 2016 ("R&R"),[8] in the

---

Class Settlement, ECF No. 85-1.

[5] Citations to "3/30/2018 Order" refer to the Order of this Court, dated March 30, 2018, ECF No. 86.

[6] Citations to "Revised Settlement Agreement" refer to the revised Settlement Agreement, filed as Exhibit A to the letter of C.K. Lee, dated May 18, 2018, ECF No. 91-1.

[7] Citations to "Sett. Agr." refer to the third and operative proposed Settlement Agreement and Release, filed as Exhibit 1 to the Declaration of C.K. Lee, dated August 10, 2020, ECF No. 285-1.

[8] Citations to "R&R" refer to this Court's Report and Recommendation, dated February 16, 2016, ECF No. 62, which was adopted by the district court on September 23, 2016.

Memorandum and Order dated March 30, 2018, and in the Memorandum and Order dated

August 21, 2019 ("8/21/2019 Order").[9]

Briefly, plaintiffs and other similarly situated employees were employed by defendants as

spa technicians, performing massages, manicures, and other spa treatments for travelers in the 19

airports across the country where the XpresSpas were located.  (Compl. ¶ 1).  Plaintiffs allege

that they were misclassified as independent contractors, paid on commission, not paid minimum

wages or overtime compensation for hours worked over 40 in a week, not paid spread-of-hours

pay as required under the NYLL, were required to travel to and from spas located in various

terminals for which they received no travel time compensation, and that they were also required

to perform other work for which they received no compensation.  (Id. ¶¶ 58, 60(1), 61, 62(6),

62(7); R&R at 3-4).  They also alleged that were never provided with the requisite wage notices

or wage statements required by the NYLL.  (Compl. ¶¶ 65-66; R&R at 4).

On September 23, 2016, the district court approved this Court's recommendation that

plaintiffs' motion for conditional certification of the FLSA claims be approved, and authorized

the parties to send the proposed Notice and Consent Form to the covered employees to allow

them to opt in to the collective action.

However, before the Notice could be issued, the parties notified the Court on September

15, 2017 that they reached a settlement in principle with the assistance of Martin Scheinman, an

experienced mediator with this Court.  They then filed a motion seeking preliminary approval of

the class action settlement.  (See Lee Decl. ¶ 19).[10]  This Court, after reviewing the proposed

---

[9] Citations to "8/21/2019 Order" refer to this Court's Memorandum and Order dated August 21, 2019, ECF No. 96.

[10] Citations to "Lee Decl." refer to the Declaration of C.K. Lee, dated August 10, 2020, ECF No. 285.

settlement, denied the motion for preliminary approval and directed the parties to submit additional information, which plaintiffs provided on April 24, 2018. (Id. ¶ 20). Following a status conference with the Court, the parties submitted a revised agreement, which this Court declined to approve.[11] (Id.)

According to plaintiffs' counsel, the parties continued to negotiate in an effort to reach a settlement that the Court would approve as fair and reasonable, but when negotiations broke down in November 2019, the plaintiffs sought permission to reopen litigation, which defendants opposed. (Id. ¶ 20). On December 30, 2019, pursuant to plaintiffs' request, the Court Ordered that defendants provide to plaintiffs an updated list of employees for purposes of notifying them of the FLSA collective action. (12/30/2019 Order[12] at 2). The notice and consent form were to be sent to the potential collective members within 21 days of plaintiffs' receipt of the list. (Id. at 3).[13]

Finally, after further negotiations, the parties reached a settlement in principle, the terms of which were memorialized in the Third Settlement Agreement and Release, dated August 7, 2020.

The Third Settlement Agreement creates a common fund of $432,000 (the "Fund"), which covers the Rule 23 Class members' awards and Collective Class members' awards; with $75,000 representing the cost of settlement administration; service awards in the amount of $16,000, representing an award of $2,000 each for the eight opt-in plaintiffs; attorneys' fees in

---

[11] The Court's rationale for denial of the original settlement and the revised settlement is set forth more fully in the 8/21/2019 Order.

[12] ECF No. 104.

[13] The collective notice was sent and opt-in notices were filed with the Court. (See Electronic Minute Entry dated March 27, 2020).

the amount of $144,000, representing one-third of the Fund; and costs in the amount of $12,987.50.  (Id. ¶ 26; Sett. Agr. ¶ 4.1; see also Mem.[14] at 5-7).

## DISCUSSION

I.      Standards for Approval of Rule 23 Class Settlements

Generally, approval of a class action settlement Rule 23 of the Federal Rules of Civil Procedure occurs in two steps:  first, the court preliminarily determines if the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e).  Whether a settlement is fair requires the Court to evaluate the written submissions of the settling parties and the negotiation process.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005); see Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (holding that the court need only find that there is "probable cause" to submit the settlement to the Class Members) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).  It is a determination left to the sound discretion of the court. Levitt v. Rodgers, 257 Fed. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).  Once the Court makes its preliminary finding, notice of the settlement is sent to the class, and the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

---

[14] Citations to "Mem." refer to the Memorandum of Law In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice of Settlement, filed August 10, 2020, ECF No. 284.

In evaluating a proposed settlement for procedural fairness, the court has a "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)). In making that determination, the court evaluates whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's best interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).

The Court must also ensure that the settlement achieves substantive fairness. In City of Detroit v. Grinnell Corp., the Second Circuit set forth nine factors (the "Grinnell factors") for courts to consider:

> (1)[T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds,

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche

Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012

WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).


      II.     Standards for Certifying a Rule 23 Class

     Before approving the settlement, the Court must also determine if the Class satisfies the

elements of Rule 23 required for class certification.  Although plaintiffs have the burden to

establish compliance with each of the requirements of Rule 23, see In re U.S. Foodservice Inc.

Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), in analyzing the issue of certification, the

court accepts as true the allegations in the complaint regarding the merits of the claim.  See

D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a

conditional determination of whether an action should be maintained as a class action, subject

to final approval at a later date."  Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181

(E.D. Pa. 2000).


      A.  Requirements of Rule 23(a)

     As noted in this Court's earlier Memorandum and Order dated August 21, 2019,

defendants do not oppose conditional certification of the Class here for settlement purposes only.

(See Mem. at 18); see also 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002)

(providing "[w]hen the court has not yet entered a formal order determining that the action may

be maintained as a class action, the parties may stipulate that it be maintained as a class action

for the purpose of settlement only").  Here, not only have the parties stipulated to the Class, but

the Court finds that the proposed Class satisfies all of the elements of Rule 23.

Rule 23(a) provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the class
> is so numerous that joinder of all members is impracticable; (2)
> there are questions of law or fact common to the class; (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly
> and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

  1) Numerosity

Turning first to the question of numerosity, based on the parties' representation as to the

number of potential class members, the Court finds that there is clearly numerosity.  Under Rule

23(a) factors, courts may only certify a class if the class is so numerous that joinder becomes

impractical.  Fed. R. Civ. P. 23(a)(1).  The Second Circuit has held that the standard for

presuming numerosity is 40 or more members.  Consol. Rail Corp. v. Town of Hyde Park, 47

F.3d 473, 483 (2d Cir. 1995).  In this case, there are 400 potential New York Rule 23 Class

Members, which is more than sufficient for numerosity.[15]  (Mem. at 20; Chen Decl. ¶ 12).  Thus,

the allegations in the Complaint clearly satisfy the standard of numerosity.

  2) Commonality

In its earlier August 21, 2019 Memorandum and Order, the Court also determined that

there are common questions of law or fact raised by the Class Members' claims. (8/21/2019

---

[15] The parties report that there are 439 FLSA collective opt-in plaintiffs, including some in New
York.  (Mem at 10; see discussion infra).  The estimated 400 potential New York Rule 23 Class Members
appear to be a subset of the 439 FLSA collective opt-ins.

Order at 11-12).  The Class plaintiffs were all arguably subject to the same wage practices and policies, including the same commission payment practice; they allege that defendants improperly failed to pay minimum wages, failed to pay proper overtime, and failed to provide proper wage statements and wage notices as required by the NYLL.  (Mem. at 20).  These types of practices have been found to be sufficient to meet the commonality requirement of Rule 23. See Campos v. Goode, No. 10 CV 224, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010); deMunecas v. Bold Food LLC, No. 09 CV 0440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010).

Accordingly, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3) Typicality

Rule 23(a)(3) requires that the lead plaintiffs' claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  In analyzing the earlier Settlement Agreement and Revised Settlement Agreement, the Court found that the Named Plaintiffs, like other members of the proposed Class, allege claims based on the same legal and factual circumstances that form the bases of the Class Members' claims, including the allegations that defendants:  (1) used the same wage practices and policies; (2) failed to pay proper minimum and overtime wages; and 3) failed to provide proper wage notices and wage statements under the NYLL.  (Mem. at 21).  Thus, the Named Plaintiffs' claims satisfy the typicality requirements for certification.

4)  <u>Adequacy of Representation</u>

Rule 23(a)(4) requires the interests of the class to be adequately represented.  In the Second Circuit, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation,"  <u>Halford v. Goodyear Tire & Rubber Co.</u>, 161 F.R.D. at 19 (quoting <u>Eisen v. Carlisle & Jacquelin</u>, 391 F.2d 555, 562 (2d Cir. 1968), <u>vacated on other grounds</u>, 417 U.S. 156 (1974)), and that the Class Members' interests are not "antagonistic" to one another.  <u>County of Suffolk v. Long Island Lighting Co.</u>, 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), <u>aff'd</u>, 907 F.2d 1295 (2d Cir. 1990). <u>See</u> <u>In re Drexel Burnham Lambert Grp.</u>, 960 F.2d 285, 291 (2d Cir. 1992).

Rule 23(g) also specifically requires the Court to assess the adequacy of proposed class counsel, looking to the work counsel has done in identifying and investigating the potential claims, counsel's experience in handling class actions and claims of the type at issue in the case, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.  <u>See</u> <u>Fogarazzo v. Lehman Bros., Inc.</u> 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Here, the proposed Class has been represented by the Lee Litigation Group, PLLC.  (Lee Decl. ¶¶ 7, 8).  Plaintiffs' counsel C.K. Lee represents that the lawyers in his firm have had "substantial experience" in prosecuting and settling wage and hour class actions and that the firm has previously been found to be adequate and appointed as class counsel in similar class actions. (Lee Decl. ¶ 7).  Attached to his Declaration, Mr. Lee cites numerous cases in which he and his firm have been appointed as class counsel since 2009.  (<u>Id.</u>, Ex. 1).  Having considered his qualifications and the efforts and resources his firm has expended in litigating this action and

attempting to achieve a reasonable resolution of the Class claims, the Court finds that the Lee Firm is qualified, experienced and able to represent the Class as Class Counsel.

In addition, there is nothing to suggest that the Lee Firm has any conflict of interest with the Named Plaintiffs or with members of the Class that would prevent the Firm from representing the Class in this matter.[16]  See In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (stating:  "'(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation'") (quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 412-13 (S.D.N.Y. 2004)); Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d at 291).

As for the second part of the analysis, there do not appear to be any conflicts between the Named Plaintiffs and the other members of the Rule 23 Class.  They do not have any interests that are antagonistic to or at odds with those of the other Class members, and their interests appear to be aligned with those of the other Class Members.  (Mem. at 21).  Given the nature of plaintiffs' claims, the Court finds that the Named Plaintiffs' claims are so interrelated with those of the other potential New York Rule 23 Class Members that they will be adequate class representatives.

---

[16] Although the Court has concerns about the involvement of counsel-controlled Claims Administrator, see discussion infra, this concern is not animated by the vigor with which counsel litigated or attempted to settle this case.  Instead, the potential for conflict lies in whether the Class award is unfairly reduced by high administration fees.

11

B.  Requirements of Rule 23(b)(3)

In addition to satisfying the prerequisites of Rule 23(a), plaintiffs also must satisfy one of

the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent

adjudications or would substantially impair the ability of other individuals to protect their

interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3)

common questions of law or fact predominate over individual questions, and a class action is

superior to other methods for bringing suit.  Fed. R. Civ. P. 23(b).  See generally Amchem

Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334

(E.D.N.Y. 2013).

In this case, plaintiffs bring this action under subdivision 23(b)(3).

1)  Common Questions Predominate Over Individual Issues

In order to establish that the proposed class meets the requirements of Fed. R. Civ. P.

23(b)(3), plaintiffs must show that the proposed class is sufficiently cohesive and common issues

predominate in order to warrant adjudication as a class.  Amchem Prods, Inc. v. Windsor, 521

U.S. at 623.  In this Court's earlier Memorandum and Order, the Court found that there were

common issues as to whether the Rule 23 Class Members were subjected to the same unlawful

pay practices.  (8/21/2019 Order at 16).  Even though there may be individualized issues when it

comes to assessing damages, the Court found that the common issues predominate.  (Id.)  See In

re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (holding that the

fact that different defenses may affect class members differently "does not compel a finding that

individual issues predominate over common ones") (quoting Waste Mgmt. Holdings, Inc. v.

Mowbray, 208 F.3d 288, 296 (1st Cir. 2000), overruled on other grounds, In re IPO Secs. Litig.,

471 F.3d 24 (2d Cir. 2006)).  Thus, the Court finds that common questions predominate in this

12

case and plaintiffs have therefore satisfied Rule 23(b)(3).  See Torres v. Gristede's Corp., No. 04 CV 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Apr. 9, 2010).

2)   Class Action as Superior Method of Resolution

Plaintiffs must also satisfy Rule 23(b)(3)'s requirement that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the Court concluded that based on the limited resources available to the Rule 23 Class Members, the expense and burden of individual litigation would make it impossible for all of the Class Members to individually redress the alleged harm done to them.  (8/21/2019 Order at 17).  Moreover, consolidating these claims will preserve judicial resources and avoid inconsistent adjudications.  See Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); Aponte v. Comprehensive Health Mgmt, No. 10 CV 4825, 2011 WL 2208586, at *11 (S.D.N.Y. June 2, 2011).  Thus, the Court found that a class action is the superior method of resolution in this case.

13

III.     Collective Action Settlements

Before considering the fairness of the settlement to the Rule 23 Class, as noted in this

Court's earlier Order, the proposed settlement here also encompasses the FLSA claims of

plaintiffs who have not opted into the action yet.  In Cheeks v. Freeport Pancake House, Inc., the

Second Circuit held that before a settlement and stipulation of dismissal relating to a plaintiff's

FLSA claims may take effect, the parties must obtain approval of the settlement from the district

court.  See 796 F.3d at 206.  This requirement applies to both individual claims and FLSA claims

of members of a class.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the court set

forth factors that courts should consider in evaluating the fairness of a settlement in a collective

action.  The court made it clear that the proposed settlement should be evaluated in light of the

"totality of the circumstances," including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which
> the settlement will enable the parties to avoid anticipated burdens
> and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of
> fraud or collusion.

As with a Rule 23 class action, the Court must make a preliminary determination as to

whether there is a sufficient basis to grant conditional certification of an FLSA collective.  Here,

the Court made the requisite findings and granted certification in February 2016.  Thus, the only

issue with respect to both the Rule 23 Class and the Collective Members under a Cheeks analysis

is whether the Third Settlement Agreement is fair and reasonable.  The fairness determination is

"'an information intensive undertaking, and the Parties must provide the Court with enough

14

information to evaluate the bona fides of the dispute.'" Douglas v. Allied Universal Sec. Servs.,

371 F. Supp. 3d 78, 82 (E.D.N.Y. 2019) (quoting Aguirre v. Torino Pizza, Inc., No. 18 CV 2004,

2019 WL 126059, at *2 (S.D.N.Y. Jan. 8, 2019)).


    IV.    <u>Fairness of the Proposed Settlement</u>

        In determining whether to grant preliminary approval of a class settlement under Rule

23(e), the Court must consider four factors: (1) adequacy of representation, (2) existence of

arms'-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class

members.  Fed. R. Civ. P. 23(e)(2).  The first two factors are classified as procedural, and the

latter two are substantive.  2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2).  These

factors supplement, rather than displace, the <u>Grinnell</u> factors.  <u>See</u> <u>id.</u>

        The <u>Grinnell</u> factors are instructive in determining whether to grant preliminary approval

of the settlement.  <u>See</u> <u>Torres v. Gristede's Operating Corp.</u>, Nos. 04 CV 3316, 08 CV 8531, 08

CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval

of a Settlement Agreement requires only an initial evaluation of the fairness of the proposed

settlement on the basis of written submissions and an informal presentation by the settling

parties") (internal quotation marks and citations omitted).


    A.  <u>Analysis of Substantive Fairness</u>

       1) <u>Complexity, Expense, and Likely Duration of the Litigation</u>

        Turning to the first of the <u>Grinnell</u> factors – the complexity of the case, the expense of

litigation and the likely duration of the litigation – this Court finds that the settlement is

15

warranted in order "to avoid significant expense and delay" that would result from continuing litigation, and "ensure recovery for the class." (Mem. at 10-11). Based on the parties' representations that continued litigation would require additional discovery, including multiple depositions, and that preparation for trial and the trial itself would "consume tremendous amounts of time and resources," (id. at 11); see In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 164, 174 (S.D.N.Y. 2000), aff'd sub nom D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)), this Court finds that the first Grinnell factor of avoiding potential protracted litigation favors settlement.

   2)  Reaction of Class to Settlement

       Although the reaction of the Class to the settlement is unknown since notice has not yet been sent, this Court notes that the named plaintiffs and opt-in plaintiffs have apparently "expressed their approval of the settlement." (See Pls.' Mem. at 11).

   3)  Stage of Proceedings and Amount of Discovery Completed

       Similarly, the Court finds that after months of litigation and extensive settlement negotiations with an experienced neutral third-party, there has been an adequate amount of discovery conducted to allow the parties to evaluate the merits of the case and reach a settlement in a cooperative and non-collusive manner. See Tiro v. Public House Investments, LLC, No. 11 CV 7679, 2013 WL 4830949, at *7 (S.D.N.Y. Sept. 10, 2013) (holding that when discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored).

   4)  Establishing Liability and Damages and Maintaining the Action Through Trial

       Here the risk of establishing liability favors settlement in this case. Although plaintiffs

16

take the position that their case is strong, they acknowledge that "[a] trial on the merits would

involve 'risks for Plaintiffs as to both liability and damages.'" (Mem. at 13).  Plaintiffs note in

their recent submission that defendants have taken the position that the spa employees fall within

an express exemption, Section 7(i) of the FLSA.  (Id.)  Accordingly, the proposed settlement

seeks to alleviate these risks and  favors approval of resolution.  (Id.)

    5)  <u>Maintaining the Class Through Trial</u>

       Plaintiffs also acknowledge that there is a risk associated with obtaining and maintaining

class certification through trial.  (Id. at 14).  Defendants would likely oppose certification and

argue that the Section 7(i) exemption makes class certification inappropriate.  (Id.)  Plaintiffs

also contend that, even if the class was certified, defendants may appeal, causing delay and

additional expense. The proposed settlement would eliminate the aforementioned risk, expense,

and delay; thus, the Court finds that this factor favors approval.

    6)  <u>Ability of Defendants to Withstand A Greater Judgment</u>

       Although plaintiffs earlier took the position that defendants might have had an ability to

withstand a greater judgment, they acknowledge that the shutdown caused by the pandemic has

negatively impacted defendants' business, particularly since most of defendants' spas are located

in airports, and air travel has been severely curtailed during the last 11 to 12 months.  Even if

defendants' financial circumstances were not adversely affected, this factor alone would not

preclude approval of the settlement.  <u>See</u> <u>In re Austrian and German Bank Holocaust Litig.</u>, 80 F.

Supp. 2d at 178, n.9.

7) <u>Range of Reasonableness of Settlement Fund</u>

Plaintiffs assert that the settlement here for $432,000 represents "considerable value," particularly given the risks of litigation and collection. (Mem. at 15). Plaintiffs explain that prior to mediation, they estimated that the total amount of damages could amount to $15 million in this case, but that was based on an assumption that there were 1,268 FLSA collective members. (<u>Id.</u>) Now that collective members have received a notice and opportunity to opt in, plaintiffs "know that there are only 439 FLSA collective members," reducing their estimated recovery by 66% to at best $5.1 million. (<u>Id.</u>)

In arguing that the settlement amount is fair when compared to the maximum possible recovery, plaintiffs' counsel describes the case as an "all or nothing" case, in that an unfavorable outcome on the single legal question of an exemption under Section 7(i) would destroy the entire case. (<u>Id.</u> at 15-16). Plaintiffs cite the decision in <u>Christopher v. SmithKline Beecham Corp.</u> where the Supreme Court determined that the pharmaceutical sales representatives were "outside salesman" and exempt under the FLSA, leaving the plaintiffs to recover nothing. 132 S. Ct. 2156 (2012). Plaintiffs note that this decision demonstrates the heightened risk of proceeding when there is an issue such as the exemption here outstanding. (Mem. at 17). While the plaintiffs acknowledge that the settlement may not provide full recovery for the plaintiffs, they contend that the settlement "provides much more than 'a fraction of the potential recovery.'" (<u>Id.</u>)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." <u>Johnson v. Brennan</u>, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting <u>Officers for Justice v.</u>

18

Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  When the proposed settlement

provides a meaningful benefit to the class when considered against the obstacles to proving

plaintiff's claims with respect to damages in particular, the agreement is reasonable.  See In re

MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the value of the Settlement Fund

justifies settling this case.  Under the Settlement Agreement, class members will each receive

their proportionate share (based on the number of weeks worked during the relevant period) of

what remains after deducting from the $432,000 total award an award for attorneys' fees of

approximately one third, plus reimbursement for litigation costs and expenses, service awards,

and the Claims Administrator's fees.  (Sett. Agr. ¶ 4.1(A)).  The Court finds that the total award

is fair and reasonable. Similarly, the Court finds that relief is adequate under the third factor of

Rule 23(e).

On the basis of the foregoing discussion, the Court finds that the proposed settlement is

fair and reasonable under the circumstances present in this case.


B.  Analysis of Procedural Fairness

The court must also determine if the settlement was "achieved through arms-length

negotiations by counsel with the experience and ability to effectively represent the class's

interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing

Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank,

236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by

examining the negotiating process leading up to the settlement as well as the settlement's

substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"  Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Although the Court is not required to make a final finding of procedural fairness as to the underlying settlement at this time, the proposed settlement was entered into only after plaintiffs' counsel obtained substantial amounts of data and employment records, prepared for the plaintiffs' depositions and participated in the mediation with an experienced neutral third-party mediator.  (Id.)  In addition to the day-long mediation session, counsel engaged in "months of negotiation" and performed detailed damages calculations based on the records provided by defendants.  (Lee Decl. ¶¶ 15, 17).

Given the preparation leading to the settlement, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116 (holding that there is a presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery").

C. Requested Relief

In accordance with the above, the Court grants preliminary approval of the Settlement Agreement and Release and certifies the proposed class for settlement purposes, and appoints

Lee Litigation Group, PLLC as Class Counsel.  The Court now turns to the four additional forms of relief requested: the appointment of a Claims Administrator, the request for attorneys' fees, the approval of the service awards for the individual plaintiffs and the opt-ins, and the approval of the proposed Notice of Settlement.

      1)  <u>Appointment of Claims Administrator</u>

In the Court's previous Order, the Court questioned the projected Claims Administrator's fee of $50,000, and noted that the proposed administrator, Advanced Litigation Strategies, LLC, is owned in part by plaintiffs' counsel.  (8/21/2019 Order at 4, n.9).  At the time of this Court's Order of August 21, 2019, when there were significantly more potential class members, the Court questioned the reasonableness of an administration fee of $50,000 when comparable administration fees cited in plaintiffs' own papers ran in the range of $30,000 or less.  (<u>Id.</u> at 24, n.16 (citing <u>Montenegro v. XpresSpa at Term. 4 JFK, LLC</u>, 15 CV 3539 (S.D.N.Y. 2016))).  Now, in their renewed motion, the plaintiffs request an Administrator's Fee of $75,000 for Advanced Litigation Strategies ("ALS").  (Mem. at 7).  Not only have they still not provided a basis for the calculation, but they have not explained the increase in the cost of administration when there are fewer class members and the procedure is an opt-out procedure, not an opt-in procedure which requires additional work on the part of any administrator.  (<u>Id.</u>)  Of additional concern, it appears that the Claims Administrator will recover at least $15,000 from XpresSpa in the event that the settlement does not receive final approval – even if it spent less than that amount.  (Sett. Agr. ¶ 3.8(C)(3)).

At least one other court has identified the potential for serious conflicts of interest occasioned by the use of a counsel-controlled claims administrator in a FLSA collective action.

See Hernandez v. Between the Bread 55th Inc., No. 17 CV 9541, 2020 WL 6157027, at *8-10

(S.D.N.Y. Oct. 21, 2020).  That case involved the same proposed class counsel and claims

administrator as the instant case.  See id. at *10.  In particular, the court in that case noted that

"[b]y virtue of their affiliation with ALS, class counsel here will receive financially some benefit

of the settlement, regardless of whether it is finally approved," triggering concerns about self-

dealing and fairness to the class of plaintiffs.  Id. at *10-11.  Accordingly, the court ordered the

plaintiffs to explain why the choice of claims administrator was not tainted by a conflict of

interest and to submit proposals from three independent claims administrators.[17]  Id. at *6.  In the

absence of any explanation for how the $75,000 fee was reached in this case, the Court finds the

approach taken in Hernandez to be appropriate here as well.

      The Court declines to approve the requested administration fees at this time, without

prejudice to plaintiffs' counsel submitting additional documentation sufficient to establish that

the appointment and the requested fee are appropriate.[18]  Specifically, the parties are to submit:

1) the proposed retainer agreement for Advanced Litigation Strategies;  2) bids from at least

three unaffiliated claims administrators based on the estimated 400 Rule 23 class members and

439 Collective opt-ins; 3) an explanation as to why the projected fees have risen from $50,000 to

---

[17] The Court notes that, in Hernandez, all of the bids were lower than $50,000, for a class of over 300 potential opt-in plaintiffs.  2020 WL 6157027 at *11.

[18] The Hernandez court found that the administrator conflict of interest was sufficient grounds to deny preliminary approval of the settlement altogether.  Hernandez v. Between the Bread 55th Inc., 2020 WL 6157027, at *3.  Here, in light of the total settlement, the Court finds that the proposed appointment does not necessarily negate the existence of "probable cause" to submit the settlement proposal to class members and hold a hearing as to its fairness.  Cf. Sanders v. CJS Sols. Grp., Inc., No. 17 CV 3809, 2018 WL 620492, at *4 (S.D.N.Y. Jan. 30, 2018) (quoting In re Traffic Executive Ass'n-Eastern R.R., 627 F.2d 631, 634 (2d Cir. 1980). However, before granting preliminary approval, the Court needs additional information about the Claims Administrator's fees and costs as set forth above.

$75,000 while the size of the Class has diminished; and 4) the anticipated time and effort needed to distribute the Notice and settlement checks.

 2)  Attorneys' Fees

 As discussed above, the Court  approves the appointment of Lee Litigation Group as counsel for the putative class.  However, the Court finds it premature to pass on the question of attorneys' fees at this time.  Counsel for plaintiffs indicate that they are seeking an award of attorneys' fees of $144,000, representing 33.33% the reduced settlement fund.  (Mem. at 5). After deductions for costs, administrator's fees and service awards from the settlement fund, the attorneys' fees represent over 40% of the remaining funds.  As the court in Douglas v. Allied Universal Security Services noted, "[a] fee that is so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies that should be awarded to the employee." 371 F. Supp. 3d at 85.  Given the incredibly small amounts that many individual Class Members are set to receive under the Settlement Agreement, the fee award here of $144,000 seems disproportionate to the amounts being awarded to the Class.  While the final fee award is not being determined at this point, "[c]ounsel must provide a factual basis for a fee award, typically with contemporaneous time records."  Guareno v. Vincent Perito, Inc., No. 14 CV 1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014).  Plaintiffs' counsel has not provided any records of hours spent on this matter, nor have they provided any information as to the rates at which they bill their clients.  Accordingly, the Court reserves decision on attorneys' fees until these records are submitted pursuant to the parties' motion for final settlement approval.

3) <u>Service Awards</u>

Plaintiffs also seek court approval for service awards in the amount of $16,000,

representing an award of $2,000 each for the eight opt-in plaintiffs.

An "incentive" or "service" award is common in class actions and serves to compensate a

plaintiff for his or her time and effort in the pursuit of litigating the claim.  <u>See</u> <u>In re Nissan</u>

<u>Radiator/Transmission Cooler Litig.</u>, 2013 WL 4080946, at *15; <u>Capsolas v. Pasta Res. Inc.</u>,

2012 WL 4760910, at *9.  The general "guiding standard" is, broadly, "the existence of special

circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and

continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or

herself to the prosecution of the claim, and, of course, the ultimate recovery."  <u>Gay v. Tri-Wire</u>

<u>Eng'g Solutions, Inc.</u>, No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014)

(quoting <u>Roberts v. Texaco, Inc.</u>, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Courts often grant named plaintiffs in class action cases an enhanced award, either in the

form of a flat fee or a multiplied amount of their share of the settlement fund.  <u>Compare</u> <u>Capsolas</u>

<u>v. Pasta Res. Inc.</u>, 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one named

plaintiff and $10,000 for the remaining named plaintiffs), <u>with</u> <u>Velez v. Majik Cleaning Serv.,</u>

<u>Inc.</u>, No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (awarding named

plaintiffs "twice the amount of the award that other class members will receive").

According to plaintiffs' counsel, the named opt-ins were actively involved at all stages of

the litigation, including conferring with counsel, and producing documents and data that aided in

counsel's evaluation of the risks of the case.  (Mem. at 3-4).  Thus, plaintiffs seek a Service

Award of $2,000 each for the eight named opt-ins.[19] (Mem. at 6).  Defendant does not object to

the Service Awards.  (See Sett. Agr. ¶ 4.3(A)).  Having considered the efforts expended by the

eight named individuals, the Court finds that a service award of $2,000 each is appropriate and

approves the request.

    4)  Notice

    Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a

reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of

giving notice to class members.'"  In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345

(quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a Rule 23(b)(3)

class action such as this, "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort" must be

provided to the class.  Fed. R. Civ. P. 23(c)(2)(B).[20]  In Eisen v. Carlisle & Jacquelin, the

Supreme Court held that individual notice, as opposed to general published notice, is required by

Rule 23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173-

76 (holding that "individual notice to identifiable class members is not a discretionary

---

    [19] The previous proposed settlement agreement provided for a $2,000 service award to the Named
Plaintiffs as well as the Opt-In Plaintiffs.  (Revised Settlement Agreement ¶ 4.3(A)).  Under the
Settlement Agreement as currently proposed, it appears that the Named Plaintiffs will not receive a
service award, but no explanation has been provided as to why this change was made.  (See generally
Sett. Agr.).

    [20] The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must
"concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the
class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if
the member so desires; (v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on
members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).  Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.  See Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988).

In its earlier Memoranda and Orders analyzing the fairness of the first two proposed settlements, the Court raised several concerns particularly related to the proposed mechanism for distributing the funds and notifying FLSA collective members of their options under the settlement.  (8/21/2019 Order at 20-32).  Initially, the proposed hybrid settlement purported to resolve the FLSA claims of the 1,562 Collective Class Members, of which 1,267 were designated as "Outside New York Collective Members," and the approximately 296 New York Rule 23 Class Members who have both FLSA and NYLL claims.  (Id. at 4).  The Rule 23 Class was to receive a traditional notice, advising the class of the lawsuit, the terms of the proposed settlement, the date of the fairness hearing, and the opportunity to "opt out" of the settlement. With respect to the collective class members, the parties proposed mailing each putative collective member a check in the amount previously determined by the parties based on the number of weeks worked.  Unlike the traditional method of notice in FLSA collective actions, the class members would not receive a consent to sue notice and advised that they could opt in

to the settlement; they also would not receive advance notice of the fairness hearing.[21]

However, the Court subsequently approved traditional opt-in notices to be sent to the FLSA

collective members.  (12/30/2019 Order at 2).

In the current Settlement Agreement, this problem has now been eliminated because the

settlement is entirely an opt-out settlement, with all Rule 23 Class Members who do not

affirmatively opt out receiving a check.  (Sett. Agr. ¶ 3.5(E)).  Those individuals who have both

Rule 23 and FLSA collective action claims will be treated the same way; the collective

members will not be required to submit claims forms.  All Members will also receive notice of

the Fairness Hearing at the time they receive the Opt-out Notice.

The Court approves the Proposed Notice subject to certain modifications, as follows.

The Notice should conform to the Court's instructions with regard to the FLSA

Collective Opt-In Notice.  Specifically, the Notice shall include English, Spanish, and Chinese

versions.  (12/30/2019 Order at 3).  Additionally, to the extent that defendants' spa locations are

not closed due to the COVID-19 pandemic, notices shall be posted on the employee bulletin

boards in those locations from the date of the Notice period until the end of the opt-out period.

(Id.)

The Notice must provide an estimated per-week recovery for the individual class

member.  As currently written, the Notice states that the recovery will be calculated "based on

the formula in the Settlement Agreement."  (Notice ¶ 6).  This sentence should be changed to:

"Based on the formula that has been preliminarily approved by the Court, you will be entitled to

---

[21] The Court also noted that the cover letter that the parties proposed to accompany the check was problematic in that it advised the recipient that they were receiving the check after the "Court . . . reviewed and approved the settlement as fair and reasonable and dismissed the case."  (3/30/2018 Order at 20 (citing original Settlement Agreement at 12)).

receive approximately $\_\_\_ for each week you worked for XpressSpa between March 16, 2012 and [the date of this Order]."  The paragraph should make clear that the amount is an estimate and is subject to change based on the Court's decision regarding attorney's fees, settlement administration fees, and so forth.  See, e.g., Tavera v. 18 Greenwich Avenue, No. 19 CV 8258, 2020 WL 4581721, at *3 (S.D.N.Y. Mar. 10, 2020).

The Notice must make clear in paragraph 12 that collective members may retain other counsel or proceed pro se if they do not wish to be represented by Lee Litigation Group.  See Petersen v. EmblemHealth, No. 20 CV 2568, 2020 WL 6390655, at *2 (E.D.N.Y. Oct. 27, 2020).


CONCLUSION

Accordingly, for the reasons stated above, the Court preliminarily approves  the proposed settlement as articulated in the revised Settlement Agreement insofar as it provides an award to the Class.  The Court further approves the appointment of Lee Litigation Group as class counsel, but declines to opine at this time on the reasonableness of the requested attorney's fees.  The request for appointment of Advanced Litigation Strategies is denied subject to submission of additional information.  The proposed Notice of Settlement is also approved but subject to the modifications set forth herein.  Plaintiffs' counsel is Ordered  to submit papers in support of the proposed Class Administrator and requested administration costs, as described more fully above, within one week of the date of this Order.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        March 30, 2021

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York

29