UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
XIAO LING CHEN *et al.*,

                        Plaintiffs,

-against-   **MEMORANDUM AND ORDER**
15 CV 1347 (CLP)

XPRESSPA AT TERMINAL 4 JFK LLC,
*et al.*,

                        Defendants.
------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

      On March 16, 2015, plaintiffs commenced this class and collective action on behalf of themselves and other similarly situated employees against XpresSpa at Terminal 4, JFK, LLC, and 34 other XpresSpas located in various airport terminals around the country,[1] seeking damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a), 216(b), and the New York Labor Law ("NYLL") § 190 et seq. and § 650 et seq., for unpaid minimum wages, unpaid overtime compensation, unpaid spread of hours wages, and for violations of the requirements to provide wage notices and accurate wage statements under Sections 195(1) and 195(3) of the NYLL. (See generally Compl.[2]).

      On September 15, 2017, the parties indicated that they had reached a proposed settlement and filed a motion with this Court requesting an Order[3] granting preliminary approval of the proposed settlement as set forth in the original Settlement Agreement and Release (the "Original

---

[1] Also named as defendants were Binn and Partners, LLC, Spa Products Import & Distribution Co., LLC, Marisol Binn, and Moreton Binn (collectively, with XpresSpa, "defendants").
[2] Citations to "Compl." refer to plaintiffs' Complaint, filed on March 16, 2015, ECF No. 1.
[3] On March 3, 2017, the parties consented to the undersigned for all purposes. The Court notes that, because of the parties' consent, it may enter a final Order approving of the settlement. See Graff v. United Collection Bureau, Inc., 132 F. Supp. 3d 470, 477 (E.D.N.Y. 2016).

1

Agreement"[4]).  The Court denied the request and raised a number of concerns regarding the Original Agreement, including the procedures for determining each Class and Collective Member's awards, the mechanism for providing notice, the fairness of the proposed service awards, and the proposed *cy pres* recipient.  (See generally 3/30/2018 Order[5]).

On April 25, 2018, this Court held a hearing, after which the parties submitted a revised Settlement Agreement and Notice ("Revised Agreement"[6]).  In a Memorandum and Order dated August 21, 2019, the Court denied the request to approve the parties' proposed Revised Agreement.  (See 8/21/2019 Order[7]).  On August 10, 2020, the parties filed a motion seeking preliminary approval of the Settlement Agreement and Release dated August 7, 2020 ("Settlement Agreement"[8]); appointing the Lee Litigation Group, PLLC (the "Lee Firm") as Class Counsel; approving the proposed Notice of Proposed Settlement; and approving Advanced Litigation Strategies, LLC as Claims Administrator.  On March 30, 2021, this Court approved the appointment of the Lee Firm as Class Counsel, approved the Notice of Settlement subject to modifications, and preliminarily approved the Settlement Agreement.  (See 3/30/2021 Order[9]).  After this Court first denied approval of Advanced Litigation Strategies, LLC, and later Arden

---

[4] Citations to "Orig. Agr." refer to the original Settlement Agreement, filed on September 15, 2017, attached as Exhibit A to the Affidavit in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 85-1.
[5] Citations to "3/30/2018 Order" refer to the Order of this Court, dated March 30, 2018, ECF No. 86.
[6] Citations to "Rev. Agr." refer to the revised Settlement Agreement, filed as Exhibit A to the letter of C.K. Lee, dated May 18, 2018, ECF No. 91-1.
[7] Citations to "8/21/2019 Order" refer to the Order of this Court, dated August 21, 2019, ECF No. 96.
[8] Citations to "Sett. Agr." refer to the third and operative proposed Settlement Agreement and Release, filed as Exhibit 1 to the Declaration of C.K. Lee, filed August 10, 2020, ECF No. 285-1.
[9] Citations to "3/30/2021 Order" refer to this Court's Memorandum and Order, dated March 30, 2021, ECF No. 287.

Claims Services as Claims Administrator (id.; 5/17/2021 Order[10]), this Court approved Simpluris, Inc. ("Simpluris") as Claims Administrator. (See 5/25/2021 Order[11]). This Court then set a hearing pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), for September 23, 2021. (See Electronic Order, dated June 1, 2021).

For the reasons set forth in this Order, the Court approves the parties' settlement as fair and reasonable, approves the attorney's fees and costs, approves the service awards, and approves the administration fees.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts underlying this class and collective action are set forth more fully in the Court's earlier Report and Recommendation, dated February 16, 2016 ("R&R"[12]), and the several other Orders this Court has issued in 2018, 2019, and 2020. (See, e.g., 3/30/2021 Order).

Briefly, plaintiffs and other similarly situated employees were employed by defendants as spa technicians, performing massages, manicures, and other spa treatments for travelers in the 19 airports across the country where the XpresSpas were located. (Compl. ¶ 1). Plaintiffs allege that they were misclassified as independent contractors, paid on commission, not paid minimum wages or overtime compensation for hours worked over 40 in a week, not paid spread-of-hours pay as required under the NYLL, were required to travel to and from spas located in various terminals for which they received no travel time compensation, and that they were also required to perform other work for which they received no compensation. (Id. ¶¶ 58, 60(1), 61, 62(6),

---

[10] Citations to "5/17/2021 Order" refer to this Court's Memorandum and Order, dated May 17, 2021, ECF No. 289.
[11] Citations to "5/25/2021 Order" refer to this Court's Memorandum and Order, dated May 25, 2021, ECF No. 291.
[12] Citations to "R&R" refer to this Court's Report and Recommendation, dated February 16, 2016, ECF No. 62, which was adopted by the district court on September 23, 2016.

62(7); R&R at 3-4). They also alleged that were never provided with the requisite wage notices or wage statements required by the NYLL. (Compl. ¶¶ 65-66; R&R at 4).

On September 23, 2016, the district court approved this Court's recommendation that plaintiffs' motion for conditional certification of the FLSA claims be approved, and authorized the parties to send the proposed Notice and Consent Form to the covered employees to allow them to opt-in to the collective action. However, before the Notice could be issued, the parties notified the Court on September 15, 2017, that they reached a settlement in principle with the assistance of Martin Scheinman, an experienced mediator with this Court. They then filed a motion seeking preliminary approval of the class action settlement. (See Lee Decl.[13] ¶ 12). This Court, after reviewing the proposed settlement, denied the motion for preliminary approval and directed the parties to submit additional information, which plaintiffs provided on April 24, 2018. (Id. ¶ 13). Following a status conference with the Court, the parties submitted a revised agreement, which this Court declined to approve.[14] (Id.)

According to plaintiffs' counsel, the parties continued to negotiate in an effort to reach a settlement that the Court would approve as fair and reasonable, but when negotiations broke down in November 2019, the plaintiffs sought permission to reopen litigation, which defendants opposed. (Id. ¶ 14). On December 30, 2019, pursuant to plaintiffs' request, the Court Ordered defendants to provide to plaintiffs an updated list of employees for purposes of notifying them of the FLSA collective action. (12/30/2019 Order[15] at 2). The notice and consent form were to be

---

[13] Citations to "Lee Decl." refer to the Declaration of C.K. Lee, filed September 8, 2021, ECF No. 296.

[14] The Court's rationale for denial of the original settlement and the revised settlement is set forth more fully in the 8/21/2019 Order.

[15] Citations to "12/30/2019 Order" refer to the Order of this Court, dated December 30, 2019, ECF No. 104.

sent to the potential collective members within 21 days of plaintiffs' receipt of the list. (Id. at 3).[16]

The parties have now reached a settlement in principle, the terms of which were memorialized in the Third Settlement Agreement and Release, dated August 6, 2020. (See Sett. Agr.; Lee Decl. ¶ 16). On June 22, 2021, notices regarding the settlement were mailed to the 740 Class members. (Lee Decl. ¶ 22; Mem.[17] at 5). There are 439 opt-in FLSA Class members and 385 Rule 23 Class members. (Mem. at 8, 18). However, many Class members qualify as both FLSA and Rule 23 Class members. Of the 740 notices, 105 were returned as undeliverable without forwarding addresses and 100 were subsequently re-mailed once Simpluris found alternate addresses. (Id.) All 100 were successfully delivered; only 5 notices remain undeliverable, resulting in a delivery rate of 99.32%. (Id.) Only one Class member has opted out of the Settlement. (Id. at 23). Approval will result in a per capita award of $583.78 before fees and expenses are deducted; the highest settlement payment will be approximately $1,330.76 and the average will be approximately $319.37. (Mem. at 5). Any unclaimed amount will be applied to a *cy pres* donation to the Chinese Staff and Workers Association. (Id. at 6).

Plaintiffs have also filed unopposed motions for attorney's fees, administration fees, and service fees. (See Atty. Fee Mot.[18]; Service Mot.[19]). The Third Settlement Agreement creates a

---

[16] The collective notice was sent, and opt-in notices were filed with the Court. (See Electronic Minute Entry, dated Mar. 27, 2020).

[17] Citations to "Mem." refer to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement, filed September 8, 2021, ECF No. 295.

[18] Citations to "Atty. Fee Mot." refer to the Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses, filed September 8, 2021, ECF No. 299.

[19] Citations to "Service Mot." refer to the Plaintiffs' Unopposed Motion for Approval of Class Representatives' Service Awards, filed September 8, 2021, ECF No. 297.

common fund of $432,000 (the "Fund"), which covers the Rule 23 Class members' awards and Collective Class members' awards; with $23,000[20] representing the cost of settlement administration; service awards in the amount of $16,000, representing an award of $2,000 each for the eight opt-in plaintiffs; attorney's fees in the amount of $144,000, representing one-third of the Fund; and costs in the amount of $12,987.50. (Sett. Agr. ¶ 4.1, 4.3; see also Mem. at 5-7).

DISCUSSION

**I.      Class Certification**

A. Rule 23(a) Class Certification

Before approving the settlement, the Court must determine whether the Class satisfies the elements of Rule 23 required for class certification. Although plaintiffs have the burden of establishing compliance with each of the requirements of Rule 23, see In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).

As noted when this Court preliminarily certified the Class on March 30, 2021, the Defendants did not oppose conditional certification of the Class for settlement purposes only. (See Mem. at 1, 7); see also 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class

---

[20] Although the Settlement Agreement states $75,000 for class administration fees (Sett. Agr. ¶ 4.1(A)), the Court expressly did not approve this award. (See 3/30/2021 Order at 21-23). However, all of the parties' filings regarding the administrative fee state that the fee is no more than $23,000. (See Mem. at 6; Atty. Fee Mem. at 20). That is also the fee amount that this Court approved on May 25, 2021, when it approved Sumpluris as claims administrator. (See 5/25/2021 Order). Additionally, the parties filed an Addendum to the Settlement Agreement and Release on September 28, 2021, stating that Sumpluris would receive $23,000. (See ECF No. 303-1).

action for the purpose of settlement only"). Here, not only have the parties stipulated to the Class, but the Court has already found that the Class satisfies all of the elements of Rule 23. (See 3/30/2021 Order at 8-13). As there have been no objections from any Class members to final certification (see Electronic Minute Entry, dated Sept. 23, 2021), the Court confirms as final its certification of the Class for settlement purposes.

### B. Collective Action Class Certification

Additionally, the proposed settlement also encompasses the FLSA claims of plaintiffs. As with a Rule 23 class action, the Court must make a preliminary determination as to whether there is a sufficient basis to grant conditional certification of an FLSA collective. Here, the Court made the requisite findings and granted certification in February 2016. (See R&R). The Court sees no reason to disturb that finding here.

## II. Standard for Approval of Class Settlement

### A. Rule 23 Class Settlement

Generally, approval of a class action settlement Rule 23 of the Federal Rules of Civil Procedure occurs in two steps: first, the court preliminarily determines if the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e). Whether a settlement is fair requires the court to evaluate the written submissions of the settling parties and the negotiation process. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005); see Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (holding that the court need only find that there is "probable cause" to submit the settlement to the Class members (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980))). It is a determination left to the sound discretion of the court. Levitt v.

Rodgers, 257 Fed. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).  Once the court makes its preliminary finding, notice of the settlement is sent to the Class, and the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable. . . ."  Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In evaluating a proposed settlement for procedural fairness, the court has a "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"  McDowall v. Cogan, 216 F.R.D. 46, 48 (E.D.N.Y. 2003) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)). In making that determination, the court evaluates whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's best interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).

The Court must also ensure that the settlement achieves substantive fairness.  In City of Detroit v. Grinnell Corp., the Second Circuit set forth nine factors (the "Grinnell factors") for courts to consider:

> (1)[T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the

8

> ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

In determining whether to grant approval of a class settlement under Rule 23(e), the Court must consider four factors: (1) adequacy of representation, (2) existence of arms'-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). The first two factors are classified as procedural, and the latter two are substantive. 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2). These factors supplement, rather than displace, the Grinnell factors. See id.

B. Collective Class Settlement

In Cheeks v. Freeport Pancake House, Inc., the Second Circuit held that before a settlement and stipulation of dismissal relating to a plaintiff's FLSA claims may take effect, the parties must obtain approval of the settlement from the district court. See 796 F.3d at 206. This requirement applies to both individual claims and FLSA claims of members of a class.

In Wolinsky v. Scholastic Inc., the court stated that the proposed settlement should be evaluated in light of the "totality of the circumstances," but also set forth factors that courts should consider, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated

9

> burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

   C. Analysis

In the Order granting preliminary approval of the Settlement Agreement, this Court evaluated both the Grinnell factors, the Wolinsky factors, and the procedural factors and found that the Settlement was substantively and procedurally fair. (See 3/30/2021 Order at 15-20). The Court finds no reason to disturb its preliminary finding of substantive fairness. The only Grinnell factor that could not be evaluated was the "reaction of the class to the settlement," but only because notice had not yet been sent. (3/30/2021 Order at 16). As notice has now been sent, with only one Class member opting out, a notice delivery rate of 99.32%, and no objections to the Settlement by any Class members (see Mem. at 14, 24; Electronic Minute Entry, dated Sept. 23, 2021), the Court finds that each of the Grinnell factors now point toward substantive fairness. In finding that the Settlement Agreement was procedurally fair, this Court noted that plaintiffs' counsel "obtained substantial amounts of data and employment records [and] prepared for the plaintiffs' depositions" and counsel for both parties participated in a "day-long mediation session" as well as "months" of negotiations. (3/30/2021 Order at 20).

   D. *Cy Pres* Designation

The settlement also proposes a *cy pres* donation of any unclaimed amounts to the Chinese Staff and Workers Association. (Mem. at 6; Sett. Agr. ¶ 4.3(D)). Although the 99.32% delivery rate and single opt-out indicates that an unclaimed amount would likely be negligible, this Court

will still evaluate the *cy pres* award.  In the 3/30/2018 Order, this Court took issue with the Original Agreement's designation of the Manhattan Children's Center as the beneficiary.  (See 3/30/2019 Order at 8-9).  As the Court noted, a proposed *cy pres* designation is appropriate if its interests "reasonably approximate the interests of the class."  In re Citigroup Secs. Litig., 199 F. Supp. 3d 845, 852 (S.D.N.Y. 2016); see also Frank v. Gaos, 139 S. Ct. 1041, 1045 (2019) (noting *cy pres* designations go to "nonprofit organizations whose work is determined to indirectly benefit class members").  "Courts routinely approve *cy pres* designations where the purpose of the organization is related to the purpose of the lawsuit."  Godson v. Eltman, Eltman, & Cooper, P.C., 328 F.R.D. 35, 59 (W.D.N.Y. 2018) (citation omitted).

The Manhattan Children's Center, while a well deserving charity, does not approximate the interests of the Class, most notably because there are Class members outside of the New York City area.  On the other hand, the Chinese Staff and Workers Association approximates the interest of the Class and is related to the purpose of the lawsuit; many of the Class members are Chinese, and although the Association is based in New York, its goals include "bringing together workers across trades to fight for change in the workplace as well as the community at large."  See About Us, Chinese Staff and Workers' Association, https://www.cswa.org/?page_id=122&lang=en.  Additionally, "courts should defer to the *cy pres* selection of plaintiffs and their counsel unless there is good cause not to defer."  Godson v. Eltman, Eltman, & Cooper, P.C., 328 F.R.D. at 59.  As such, the Court finds the *cy pres* designation appropriate in this case.

### E. Requested Relief

In accordance with the above, the Court grants final approval of the Settlement Agreement and Release, finds that the settlement is fair, reasonable, and adequate in all respects,

and that it is binding on Class members who did not timely opt out pursuant to the procedures set forth in the 3/30/2021 Order. The Court now turns to the three additional forms of relief requested: the request for attorney's fees, the approval of the service awards for the named opt-ins, and the request for administration fees.

### III. Attorney's Fees

As discussed above, the Court already approved the appointment of Lee Litigation Group as counsel for the putative class but found it "premature" to rule on the attorney's fees award. (See 3/30/2021 Order at 23). In considering the fee request, the Court looks to: (1) counsel's time and effort in connection with the litigation; (2) the quality of the representation; (3) the complexity of the litigation; (4) the risks of litigation; (5) the relationship of the fee to the settlement; and (6) public policy concerns. See United States v. City of New York, No. 07 CV 2067, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016).

Courts have significant discretion in awarding attorney's fees. Courts in this circuit routinely grant attorney's fees of 30% to 33.33% in class action cases where counsel's fee was contingent on success. See Khait v. Whirlpool Corp., No. 06 CV 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding fees equal to 33% of $3 million settlement); see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2008) (approving fees of 33.3% of a $1.5 million settlement).

Here, counsel for plaintiffs seeks an award of attorney's fees of $144,000, representing 33.33% of the settlement fund. (Mem. at 6). Plaintiff's attorneys have spent "more than 492 attorney and paralegal hours," which results in a lodestar amount of $221,858.50. (Fee Mem.[21]

---

[21] Citations to "Fee Mem." refer to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses, filed September 8, 2021, ECF No. 300.

at 1).  Although the percentage method is the preferred method in this circuit, see, e.g., McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005), the lodestar method is used as a "cross check" to ensure that the percentage amount is not unreasonable.  See Goldberger v. Integrated Res., Inc., 209 F.3d at 50.  Here, the proposed fee is 65% of the lodestar amount, which is well within the range of previously approved awards.  See, e.g., Beckman v. Keybank, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (granting award where award was 6.3x the lodestar amount).

Further, each of the factors noted above weigh in favor of granting plaintiffs' motion.  Counsel spent a significant number of hours on this case, which has been going on for more than six years.  Counsel's representation was also of a high quality; defendants will pay $432,000 to settle this litigation, with $236,012.50 going to the Class.  Such an award is favorable to the Class, particularly considering the risks of litigation.  Additionally, as this Court is well aware, and the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981).  This case, which also involved a Rule 23 class action, is particularly complex, and involved significant factual development and legal briefing.  Such complexity supports counsel's motion for fees.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (noting complex mixed questions of fact and law supported court's award of attorney's fees representing approximately 40% of the settlement).  Further, defendants settled without admitting liability and plaintiffs acknowledge that establishing all elements of the wage and hour violations they allege as applied to plaintiffs would "involve significant risks."  (Fee Mem. at 13).  Considering the work of plaintiffs' counsel, coupled with the lodestar comparison and the fact that courts in this circuit have routinely awarded attorney's fees amounting to 33% of the

settlement amount, see, e.g., Khait v. Whirlpool Corp., 2010 WL 2025106, at *8 (approving fees of 33% of $9.25 million in FLSA and wage and hour case), the fee is reasonable in relation to the settlement amount.

Lastly, public policy weighs in favor of awarding attorney's fees, particularly in cases like this, where both the class and the settlement amount are relatively small. Frank v. Eastman Kodak Co., 228 F.R.D. at 189 (noting that attorneys would likely be unwilling to take on "small-scale class actions" absent award in settlement of $125,000); see also McLaughlin v. IDT Energy, No. 14 CV 4107, 2017 WL 3642627, at *59 (E.D.N.Y. July 30, 2018) (describing $1.9 million award for 56,653 class members as "relatively small"); Lizondro-Garcia v. Kefi LLC, 2015 WL 4006896, at *31 (S.D.N.Y. July 1, 2015) (describing award of $315,000 for 235 class members as "relatively small"); cf. Dr. Stephanie Plancich & Janeen McIntosh, Trends in Wage and Hour Settlements: 2019 Update, NERA Economic Consulting (June 4, 2020) (finding median settlement amount from 2010-2019 was $2.2 million). Further, public policy favors an award of attorney's fees when "the class members' small individual claims would not justify the expense of separate litigation." In re Parking Heaters, Antitrust Litig., No. 15 MC 940, 2019 WL 8137325, at *25 (E.D.N.Y. Aug. 15, 2019). The Court also notes that no Class member has objected to the request for attorney's fees. (Atty. Fee Mem. at 2). Thus, the plaintiffs' request for an award of attorney's fees in the amount of $144,000 is granted.

The Court also grants counsel's request for reimbursement of their litigation expenses in the amount of $12,987.50. (Mem. at 6); see In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (awarding attorney's expenses incurred that are "incidental and necessary to the representation" of the clients). The expenses in this case included "investigation, filing fees, mediation fees, and the 216(b) mailings," which are clearly

14

necessary to litigating this action. (Fee Mem. at 19).

The Court hereby grants plaintiffs' motion for attorney's fees; plaintiffs' counsel is awarded their requested fees of one-third of the settlement fund as well as reimbursement of their litigation expenses, both of which the Court finds to be fair and reasonable.

**IV.     Service Awards**

Plaintiffs also seek final court approval for service awards in the amount of $16,000, representing an award of $2,000 each for the eight opt-in plaintiffs: Kathy Dickelman, Darryl Tompkins, Kimberly McCants, Antranae Lee, Kimberly Peek, Freida Knox, Zenida Lozada and Tiara Robinson. (Mem. at 6; Service Award Mem.[22]). An "incentive" or "service" award is common in class actions and serves to compensate a plaintiff for his or her time and effort in the pursuit of litigating the claim. See In re Nissan Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *9. The general "guiding standard" is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." Gay v. Tri-Wire Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

This Court previously approved the award, noting that "the named opt-ins were actively involved at all stages of the litigation, including conferring with counsel, and producing documents and data that aided in counsel's evaluation of the risks of the case." (3/30/2021 Order

---

[22] Citations to "Service Award Mem." refer to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Class Representatives' Service Awards, filed September 8, 2021, ECF No. 298.

at 24; see also Service Award Mem. at 1-2). Defendant does not object to the Service Awards. (See Sett. Agr. ¶ 4.3(A)). Further, the requested award is approximately 3.7% of the total award, and courts have approved awards that represent a much larger percentage. See, e.g., Reyes v. Altamera Group, LLC, No. 10 CV 6451, 2011 WL 4599822, at *1, *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards totaling $50,000, representing approximately 16.6% of the $300,000 settlement); Parker v. Jekyll & Hyde Ent. Holdings, LLC, No. 08 CV 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (approving service awards totaling 11% of the total recovery). Having considered the efforts expended by the eight named individuals, the Court finds that a service award of $2,000 each is appropriate and grants the request.

## V. Administrator Fees

Finally, as stated during the Fairness Hearing and as provided in the addendum to the Settlement Agreement, plaintiff seeks an administrator's fee of $23,000 as compensation for the services of Claims Administrator Simpluris. (See ECF No. 303-1; Atty. Fee Mem. at 20; Mem. at 6). Based on its experience with similar settlements, the Court finds the $23,000 fee to be reasonable, particularly as the Class will receive $236,012.50. See Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC, No. 15 CV 1347, 2019 WL 5792315, at *20 n.21 (E.D.N.Y. Aug. 20, 2019) (remarking that the proposed administrator's fee of $50,000 was not justified in light of the $9,500 fee awarded for administering a nationwide class and collective settlement in a similar case).

## CONCLUSION

For the reasons set forth above, the Court grants final approval of the Class Settlement, awards Class Counsel attorney's fees and costs as requested, approves the service awards, and approves the administrator's fee. The parties are Ordered to submit a status report confirming

that the checks have been distributed to the Class no later than November 1, 2021. If the administrator is unable to distribute the awards within thirty days, the parties are instructed to submit a letter to the Court requesting a telephone conference as soon as possible so that the Court and parties can discuss the timeline for distributing the settlement award.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: October 1, 2021
      Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
Chief United States Magistrate Judge
Eastern District of New York